UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  M/V JOANNA

MISC. NO.  21-mc-592

ORDER AND REASONS

Before the Court is the Motion of Warlito Tan to Quash or Vacate Warrant and for Prompt Release from Constructive Detention or to Modify Conditions of Release and to Take Deposition, to Declare that the Government May Not Impose by Contract or Otherwise Extra-Judicial Conditions on Chief Tan's Liberty, and for Expedited Briefing and Hearing (Rec. Doc. 20), in which Haldun Akkaya, Nimuel Nalagon, Louie Gonzaga, Gerone Bernabe, Manuel Magayon Baliad II, and Beinvenido Cabanayan join (Rec. Doc. 26) (together "witnesses"). The government opposed (Rec. Doc. 36).  The witnesses filed a reply (Rec. Doc. 37). Oral argument was held April 21, 2021. Thereafter, the witnesses filed additional briefs on May 21, 2021 (Supplemental Memo, Rec. Doc. 56), and June 15, 2021 (Supplemental Memo, Rec. Doc. 77).  In addition, beginning on May 17, 2021, the court held periodic status conferences to determine the government's continued need for the witnesses. For the following reasons, the Motion to Quash is DENIED except as to the issue of whether the grand jury proceeding and the anticipated future court proceeding are separate proceedings requiring separate material witness warrants, which the court hereby takes under submission. The government shall file a memorandum addressing its position on this issue by July 2, 2021. Further, the court will continue to require the government to report to it bi-weekly.

1

Background

This miscellaneous action was initiated by the Motion for Issuance of Material Witness Warrants by the United States of America on March 25, 2021, which was accompanied by the affidavit of Special Agent Jason Wyle of the Coast Guard Investigative Service of the United States Coast Guard. The subject witnesses are members of the crew of the MV JOANNA, they are foreign nationals, and they are believed by the government to have evidence material to the investigation of suspected criminal violations of the Act to Prevent Pollution from Ships ("APPS"), the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 ("MARPOL"), and the Port and Waterways Safety Act ("PWSA"). The affidavit described the investigation, beginning with the examination of the ship on March 11, 2021, shortly after its arrival in the United States. At that time, the Coast Guard discovered evidence of an unauthorized modification of required pollution prevention equipment. As a result, the government believes the vessel's Oil Record Book ("ORB") contains false entries and omissions that concealed discharges made in violation of MARPOL. The Coast Guard also discovered evidence of an unauthorized modification to a fuel oil heater safety relief valve piping outlet, giving the government reason to believe the vessel had an unreported hazardous condition in violation of PWSA. The undersigned issued the arrest warrants and at their initial appearances on March 25, 2021, ordered the witnesses[1] to remain in the Eastern District of Louisiana until further notice and to relinquish their passports to the court.

On March 29, 2021, Chief Engineer Warlito Tan filed the present Motion to Quash or Vacate Warrant and for Prompt Release from Constructive Detention or to Modify Conditions of

---

[1] Captain Haldun Akkaya was allowed to leave the Eastern District of Louisiana to live with his wife and/or daughter in Boston during the pendency of the Grand Jury proceedings. He is required to remain in the Eastern District of Louisiana or the District of Massachusetts and was also required to relinquish his passport.

Release and to Take Deposition, to Declare that the Government May Not Impose by Contract or Otherwise Extra-Judicial Conditions on Chief Tan's Liberty. The other witnesses joined in the motion.

After the filing of Tan's motion, he learned that his father in the Philippines had passed away. The court held a status conference with the parties and then a hearing at which the court ordered that Tan be allowed to travel to the Philippines from April 8, 2021, to May 20, 2021. Evidence of his round trip ticket was provided. His passport was returned to him. He was required to sign a $10,000 unsecured appearance bond, relinquish his seaman's book, and ordered to appear for a status hearing on May 24, 2021, at which time he would be required to relinquish his passport.

The court set a briefing schedule on the Motion to Quash and set oral argument for April 21, 2021. After a two and a half hour oral argument, unconvinced that the witnesses had demonstrated that the material witness warrants should be quashed immediately, the court took the matter under advisement and began conducting periodic status conferences with counsel for the government and the witnesses to determine the government's continued need for the witnesses, as well as to check on the well-being of the witnesses.[2] During the May 17, 2021, status conference the court determined that the government did not need Tan on the date he was originally required to return. The court modified its order to require him to return to this district on June 10, 2021.

On June 11, 2021, counsel notified the court at approximately 1:30 p.m. of a forthcoming motion to allow Bernabe to return to the Philippines for the funeral services of his mother who had passed away that day. Just as with Tan, all parties moved most expeditiously (over the course of

---

[2] Following up on a comment that the witnesses feared contracting COVID, the court required that vaccines be immediately made available at the employer's expense. Four of the five local witnesses were then vaccinated. (Akkaya was in Boston; Tan was in the Philippines.) Responding to counsel's comment that the crew were bored and frustrated, the court suggested English lessons be made available to the crew, or other personal enrichment opportunities to fill their days, but this idea was rejected by their counsel.

one afternoon), to make this happen on a timely basis on similar conditions as for Tan's travel to the Philippines.

Having determined that a ruling is now necessary to resolve some of the underlying legal issues, the court takes up the witnesses' motion. The witnesses argue that the warrants should be quashed because government investigations are not "criminal proceedings" within the meaning of the Material Witness Statute. At the time they filed their motion, there was no grand jury proceeding pending. Shortly thereafter, however, the grand jury proceeding was initiated. Because there has been a grand jury proceeding pending for nearly the entire operative time, the court will not address the witnesses' argument that the Material Witness Statute is inapplicable before a grand jury investigation has begun.

The witnesses also argue that a grand jury investigation does not qualify as a criminal proceeding within the meaning of the Material Witness Statute. They argue that given the serious constitutional issues raised by the prolonged detention of the witnesses, ambiguity in the statute must be construed to protect the witnesses' rights. The witnesses also argue that detaining them without offering immunity consistent with 18 U.S.C. §6002 violates their fundamental constitutional rights by holding them indefinitely and without probable cause pending a potential criminal charge. The witnesses argue that even if a criminal proceeding were pending, the court should exercise its discretion not to hold the witnesses because MARPOL and APPS contemplate flag state enforcement, because the penalties historically imposed demonstrate that an infringement of liberty is not warranted, and because the witnesses' testimony can be secured without detaining them. They argue that the regulations were not intended to make possession of inaccurate, incomplete, or misleading ORB entries a crime against the United States and the witnesses cannot be prosecuted for entries made on the High Seas where United States law did not

apply. In the alternative, even if the warrant is not stricken, they argue that they should be allowed to go home immediately after an expedited deposition. Tan argues that the government should not be allowed to impose additional, extra-judicial conditions on his liberty that it negotiated with his employer—such as requiring that he be sequestered from the rest of the crew in a different, out of the way hotel.

The government opposes. It submits that the Second Circuit Court of Appeals in United States v. Awadallah, 349 F.3d 42 (2d Cir. 2003) has held that a grand jury proceeding is a criminal proceeding under the Material Witness Statute and that no other circuit has held otherwise. It further argues that the statute does not violate the Fourth Amendment, pointing out that the witnesses have cited no precedent holding to the contrary. The government argues that full immunity under 18 U.S.C. § 6002 is not appropriate at this time, though it notes it has begun the process to obtain authority to compel their testimony pursuant to that statute.  It points out that it sought to informally proffer the material witnesses, but they rejected what the government describes as its standard practice. Pursuant to a proffer letter, the witness is granted limited use immunity but not derivative use immunity. The government submits that its standard procedure is to obtain information from the witness pursuant to a proffer letter first so that it can determine the value of the testimony, a factor to be considered when it certifies that the testimony may be necessary to the public interest as required to grant § 6002 immunity. The government says that it may decide that additional investigation is needed to proceed to immunize some, all, or none of the material witnesses.[3]

The government also argues that the movants' arguments regarding MARPOL, APPS, and international law are inapposite and contrary to controlling Fifth Circuit precedent. It insists that a

---

[3] Since the filing of the motion, all of the witnesses except Tan and Akkaya have been granted immunity and have testified at least once before the grand jury.

person can be liable for failing to maintain an ORB in violation of federal regulations when the alleged discharges and false entries were made in international waters. It argues that jurisdiction for MARPOL violations is not limited to the flag state. The government adds that none of the movants' arguments have any bearing on the apparent violation of the PWSA, which is alleged to have occurred entirely within this district.

With regard to movants' request for Rule 15 depositions, the government submits that depositions within 14 days are not feasible. It points out that the Court has already determined that the witnesses' testimony is material and that it would be impracticable to secure their presence by subpoena. The government notes that if the witnesses were not subject to the warrants, they would be working aboard the MV JOANNA until at least July 2021. It says the witnesses are effectively on shore leave—they are being paid their wages, hotel, and receiving a federal per diem allowance—and the arrangements are not interfering with their anticipated away-from-home schedules. The government says that although the witnesses have expressed a willingness to return to the United States, no assurance can actually be provided. The government submits that it is likely that they will be employed aboard a vessel at the time they are needed for trial and it probably will not be possible to serve them with a trial subpoena. The government argues that the release of the witnesses now would result in a failure of justice by preventing the United States from properly investigating violations of federal criminal law. It points out that an investigation has numerous steps and if depositions were held now, the questions would be speculative. It adds that all potential parties must be allowed an opportunity to participate in the depositions to prevent a future defendant from arguing that the testimony cannot be used at trial because it had been unable to meaningfully participate in the deposition to fully develop facts necessary to its defense. Conducting depositions pre-indictment heightens this risk because without knowing who will be

indicted, the government cannot know which parties to include in the depositions, nor the charges and potential theories of liability that will be identified. This, in turn, impacts and impedes the ability of the parties, government and defendants alike, to prepare and meaningfully participate.

In reply, the witnesses submit that contrary to the government's suggestion that actions taken by the witnesses are actually slowing down the investigation, had they not retained counsel and requested immunity and protection of their rights, the investigation would likely drag on more slowly. Counsel retells examples from his own personal experiences where only counsel's involvement expedited the investigation and release of the witnesses. The witnesses also challenge the government's insistence that immunity cannot be granted promptly, citing an example from counsel's experience in Delaware where the Assistant United States Attorney sent a draft §6002 immunity letter to crew counsel two weeks after the crew was forced ashore.[4] The movants also submit that this case is straightforward and does not require prolonged investigation. They note that the most reliable information about the operation of the oil water separator ("OWS") and its oil content meter is the historic data stored in the meter itself, which was seized in early March. They point out that all but one of the crew were interviewed by the Coast Guard about the modification and all explained they had been unaware of it. They submit the government has no evidence for its theory that the crew is lying,  and they point out that the government has not shared anything revealed from the meter about when the equipment was modified. They attach the declaration of a seafarer that was detained in a hotel in Louisiana for most of twenty months in a similar case, documenting his experiences and feelings of depression and anxiety.

The movants argue that although seafarers are accustomed to working up to six months at sea, being detained indefinitely in a roadside hotel in the United States is still a hardship. They  do

---

[4] At oral argument, the government distinguished this case, noting that there, the Chief Engineer had already plead guilty by that time.

not have the satisfaction of working. They are not comforted by knowledge that they will be back with their families at the end of their voyage.  The movants point out that the government presents no example of a seafarer's testimony that was lost because he breached a promise to return when his testimony was needed. They submit that the government holds seafarers at the target's expense because it is convenient for government lawyers, it is free to the government, and the expense to the corporate targets provides negotiating leverage.

The movants argue that the <u>Awadallah</u> case relied on the government to support use of the Material Witness Statute for grand jury witnesses does not condone the use of §3144 to detain a person they intend to charge pending their collection of sufficient evidence to establish probable cause. They point to Federal Rule of Criminal Procedure 46(h), which requires the government to submit bi-weekly reports justifying the continued detention of material witnesses, and submit that the government never submits the required reports in these cases.

The movants point out that the government does not even try to argue that their use of the Material Witness Statute during a Coast Guard investigation prior to the initiation of a grand jury investigation is appropriate. Instead, the government merely submits that the issue is moot because a grand jury investigation is open now. The movants argue that the government's failure to defend its wrongful act shows that the government takes improper liberties with the Material Witness Statute.

The movants argue that this court enjoys broad discretion to fashion an order for prompt depositions. They submit that the government should not be allowed to detain the witnesses during not only the grand jury proceedings but also whatever criminal proceedings may ultimately arise out of the grand jury investigation.  They argue that the government cites no authority to support delaying their depositions until after the full development of a criminal case for charges that have

not been brought. They argue that if an indictment is issued, that will be a separate criminal proceeding. They submit that the Second Circuit in <u>Awadallah</u> encouraged the use of depositions to secure testimony from grand jury witnesses and allow their release.

The movants argue that the government has not explained why the court should not exercise its discretion to release the witnesses for violations of law largely, if not entirely, outside the jurisdiction. They argue that the court should exercise its discretion to ensure their prompt release because MARPOL and APPS contemplate flag state enforcement, which the government has not shown to be inadequate in this case. They argue that the Department of Justice rarely uses material witnesses warrants—only about 500 annually nationwide outside of the border/immigration context. They further argue that the investigation here primarily relates to the accuracy of records that the government did not rely upon and an alleged failure to report a vessel condition that did not cause any damage or incident—a matter typically handled administratively. They argue that the government never prosecutes violations of PWSA where there is no incident or damage, unless they do so to bolster a MARPOL/APPS matter and negotiation. They point out that the government did not mention the PWSA violations in the security agreement with the vessel owner and operator and the Coast Guard only questioned Chief Engineer Tan and not the other crew about the valve issue. They further argue that the court should exercise its discretion to ensure their release because routine issuance of material witness warrants in these cases encourages the government to treat these seafarers as mere collateral, the government has no estimate for when it will conclude its grand jury investigation, the government speculates the crew will not return if released but provides no evidence of same, the crewmen are detained as hostages to drive up the cost to the corporate target, and the process and uncertainty are cruel and unnecessary.

The movants also argue that the Supreme Court has not upheld the material witness statute. They argue that the Court in Ashcroft v. al-Kidd, 563 U.S. 731 (2011), merely held the Attorney General was immune from liability if he in fact condoned a policy of securing valid warrants for pretextual purposes. They insist no court has suggested that the government may arrest witnesses whom it does not intend to call, to whom it will not grant immunity, and against whom they are building a case.

Movant Tan further argues that the security agreement between the government and the vessel owner and operators deprives him of his civil liberties and violates the Material Witness Statute. He seeks a declaration that the government may not contract to isolate him. Movants argue that human beings cannot be held as substitute collateral for the release of vessels and that the cases cited by the government do not give the government the right to do so.

The movants challenge the case law cited by the government to show that the Fifth Circuit interprets MARPOL to criminalize failing to maintain an ORB in violation of federal regulations when the alleged discharges and false entries were made in international waters. They submit those cases were wrongly decided. But they do not ask the court to disregard the decisions. They ask the court to consider MARPOL's prescribed method for enforcement in exercising its discretion. They also cite a Fifth Circuit case  holding that only a master, and not a chief engineer, can be held liable for knowingly failing to maintain an accurate ORB.

In a supplemental memorandum filed May 21, 2021 (Rec. Doc. 56), following oral argument and the first status conference with the court, the witnesses argue that the government should be required to take or complete their grand jury testimony promptly via one-party depositions. They point out that the government's response to their original motion addressed the viability of Rule 15 depositions for use at trial but did not address the possibility of taking one-

party depositions to be used before the grand jury. They also argue that grand jury proceedings are separate and distinct from potential criminal proceedings and that, therefore, if the government wishes to detain them as witnesses to a judicial criminal proceeding, it must first initiate that proceeding by filing a complaint or indictment. They cite examples of statutes and court decisions that distinguish between court proceedings and grand jury proceedings. They also argue that the circumstances of this case, based on allegedly misleading records, should not require recalling witnesses to the grand jury multiple times.

In yet another supplemental memorandum filed June 15, 2021 (Rec. Doc. 77),  after Tan had returned from the Philippines, Tan submits that he and his family continue to be in distress and grief over the loss of his father and his ongoing detention. Pointing out that the government has not scheduled his grand jury or other testimony,  he argues that there is no obvious purpose to his required presence. He argues that now that he has returned, there can no longer be a reasonable concern that he would not return to provide testimony. He argues that his promise to return provides reliable and extraordinary reassurance. He further argues that by insisting on additional assurance, the government is demanding more from a prospective foreign witness than it ever demands of United States citizens. He argues that it is backwards to impose such extraordinary requirements on non-citizens while the government gathers evidence of events that occurred exclusively or primarily outside of this country at what Tan describes as a "snail's pace." To the extent the government would argue that Tan is less likely to return if the government decides to charge him instead of call him as a witness, Tan submits that he would return to meet any charges. Further, Tan argues again that it would be improper for the government to use § 3144 to detain a witness suspected of criminal activity. He insists that if the government has developed probable

cause to charge, it should charge him promptly via a complaint but he should not continue to be held as a witness to circumvent his rights.

Law and Analysis

1. *Material Witness Statute*

The Material Witness Statute provides that a magistrate judge may order the arrest of a person "[i]f it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena." 18 U.S.C. § 3144. The Second Circuit Court of Appeals has held that a grand jury proceeding is a "criminal proceeding" for purposes of § 3144. United States v. Awadallah, 349 F.3d 42, 55 (2d Cir. 2003). The court of appeals considered the phrase "criminal proceeding" in the context of the statute, as used in other statutes, and as defined by Black's Law Dictionary and determined that the phrase might be read to include a grand jury proceeding or it might not. Id. at 52-53. It then turned to the legislative history, including a footnote to the Senate Judiciary Committee Report advising that "[a] grand jury investigation is a 'criminal proceeding' within the meaning of this section. Bacon v. United States, 449 F.2d 933 (9th Cir.1971)." Id. at 54 (quoting S.Rep. No. 98–225, at 28 (1983)). The Bacon case cited in the Report had interpreted the nearly identical predecessor to § 3144 as encompassing grand juries. Id. The court of appeals explained "[w]hen Congress enacted § 3144—and until the district court ruled otherwise in this case—there was a settled view that a grand jury proceeding is a 'criminal proceeding' for purposes of the material witness statute. We therefore conclude that a grand jury proceeding is a 'criminal proceeding' for purposes of § 3144." Id. at 55.

The Material Witness Statute further provides that:

> No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by

12

deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C. § 3144. Federal Rule of Criminal Procedure 15(a)(2) provides that "[a] witness who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript." Fed. R. Crim. P. 15(a)(2).

Other courts' decisions considering similar cases involving foreign seamen have turned on the stage of the government's investigation. For example, in Matter of Grand Jury Proc. [Redacted], the court applied the standard set out by § 3144 and assessed whether "the testimony of the Movants 'can adequately be secured by deposition, and [whether] further detention is not necessary to prevent a failure of justice.'"[5] 377 F. Supp. 3d 439, 445 (D. Del. 2018). The witnesses had been detained—at first pursuant to an agreement between the corporate parties and the government, and later by court order—for almost nine months, and the government reported that the investigation was nearly complete. Id. at 447-49. The court considered that the targets of the investigation could be prejudiced if they were required to cross examine the witnesses before charges were filed and evidence was fully developed. Id. at 447. The court considered that constitutional issues might render the depositions inadmissible at trial, which would leave the government without material witness testimony that might be needed to prove its case. Id. The court also considered the serious burden of continued detention on the witnesses. Id. at 448. The court denied the request for depositions and release without prejudice and ordered a hearing one

---

[5] The government had argued that the "exceptional circumstances" test required by Rule 15(a)(1) applied, but the court rejected that argument. 377 F. Supp. at 444. The government here does not contend that exceptional circumstances are required to order a deposition.

month later to allow the investigation to complete. Id. at 449. The court stated that it was inclined to set the depositions shortly after that hearing. Id.

In United States v. Dalnave Navigation, the witnesses had been "detained" for over six months, the agreement with the corporations had expired about a month earlier, the government had taken over payment of their lodging expenses and a stipend, and an indictment had been returned against two individuals and the vessel operator. No. CRIM. 09-130, 2009 WL 743100, at *2 (D.N.J. Mar. 18, 2009). A motion to vacate the warrants had been filed by the witnesses prior to the indictment being issued but had been reserved by the court based on the witnesses' planned motion for Rule 15 depositions. Id. The court ordered the Rule 15 depositions begin within two weeks and be completed within two weeks and that the witnesses be released immediately thereafter. Id.

The court similarly ordered depositions be taken in In re Mercator Lines Ltd. (Singapore) Pte. Ltd.. No. CRIM. 11-MJ-00203-N, 2011 WL 10637454, (S.D. Ala. Oct. 25, 2011). There, the court ordered that the vessel master's deposition be taken within 45 days and that thereafter, a hearing would be set and the government would be required to show why he should not be released. Id. at *10. The vessel had only been arrested about a month earlier. Id. at *1. The government had argued that pre-indictment depositions would cause a failure of justice to occur by forcing it to disclose investigative material to previously-unidentified targets. Id. at *9. The court considered that the government had sufficient documentation seized from the vessel and transcripts of interviews with two crewmembers to determine whether the master (responsible for signing the ORB) had knowledge that he was authenticating incomplete or incorrect information such that it could determine whether the master was the target of an investigation and further that the

government would have two more opportunities to present information to the grand jury prior to the deposition deadline. Id. at *10.

 2. *Movants' Arguments*

  a. *Availability of the Material Witness Statute*

Movants argue that § 3144 is not available here because the government is merely conducting an investigation but there is no "criminal proceeding." They submit that the government has cited no law to support finding that an investigation that might lead to a grand jury investigation is a criminal proceeding within the meaning of § 3144. They argue, without citation to authority, that the "primary purpose" of the statute is to protect the rights of a defendant in an actual criminal proceeding to compulsory process. They insist the warrant must be dissolved.

The movants further describe the Second Circuit's decision in Awadallah as bad law created in the wake of the 9-11 terrorist attacks and argue that § 3144 should not even be interpreted as applying to grand jury proceedings. They cite cases interpreting the phase "criminal proceedings" in other contexts. They do not address the legislative history analyzed by the Awadallah court. Without citation to any authority, they argue that Congress could not have wanted to give the government the unfair advantage of being able to detain potential witnesses before the potential defendant is afforded the rights of an actual criminal defendant. Again without citation to authority, they submit that the government often chooses not to file complaints to ensure that no defendant has rights to a speedy trial under the Speedy Trial Act or the Sixth Amendment. They point out that form AO 443 (Rev. 11/11) used by the Court in ordering the arrest of the material witnesses in this case is titled "Warrant for the Arrest of a Witness or Material Witness in a Pending Criminal Case." (Rec. Doc. 9). They submit this shows that the court understands § 3144 to apply to pending criminal cases.

The government points out that no court has held that § 3144 does not apply to grand jury proceedings. It adds that the court need not decide whether § 3144 applies where there is no grand jury proceeding because here, there is now a grand jury proceeding.

The court finds no basis to stray from the reasoning of the court of appeals in <u>Awadallah</u>. The witnesses' arguments here about what Congress must have intended are unsupported, and their examples of how the phrase "criminal proceedings" has been interpreted are cherry picked from contexts other than § 3144. In contrast,  the Second Circuit in <u>Awadallah</u> considered a wide variety of statutes and precedent interpreting "criminal proceedings" and ultimately analyzed the legislative record to settle on its conclusion that "criminal proceedings" in § 3144 includes grand jury proceedings. This court is especially convinced by the fact that, as observed by the <u>Awadallah</u> court, Ninth Circuit Court of Appeals precedent at the time held that the nearly identical predecessor to § 3144 encompassed grand jury investigations and the Senate Judiciary Committee Report cited this precedent in advising that grand jury investigations are criminal proceedings within the meaning of § 3144. Additionally, the court notes that Federal Rule of Criminal Procedure 46(h)(2) provides that "[a]n attorney for the government must report biweekly to the court, listing each material witness held in custody for more than 10 days *pending indictmen*t, arraignment, or trial." Fed. R. Crim. P. 46(h)(2) (emphasis added). This shows that the detention of witnesses material to a grand jury investigation are contemplated by the Federal Rules. The court here follows the Second Circuit and interprets "criminal proceedings" in § 3144 as including grand jury proceedings.

### 3.  *Constitutionality of the Material Witness Statute*

The witnesses next argue that even as applied to a pending criminal case, the Material Witness Statute raises constitutional concerns. They argue that the government is using the

Material Witness Warrant as a general warrant to arrest someone who may have played a role in alleged improper conduct while they collect sufficient evidence to establish probable cause that the person did so.

The government points out that the witnesses rely merely on concurring opinions of the Supreme Court in <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731 (2011), the decisions reversed by the majority of the Supreme Court in that case, and law review articles. The government submits that the majority of the Supreme Court in <u>al-Kidd</u> held that reasonableness under the Fourth Amendment is primarily an objective inquiry allowing objectively reasonable actions on the government's part. It argues that the witnesses may not like the statute or the holdings of <u>al-Kidd</u> and <u>Awadallah</u>, but the statute is constitutional.

Indeed, although the movants seek to construe the holdings and analysis of the courts in <u>al-Kidd</u> and <u>Awadallah</u> narrowly, these cases support finding the Material Witness Statute can be applied constitutionally to detain individuals with information material to a grand jury investigation. The Second Circuit in <u>Awadallah</u> considered judicial precedent upholding the constitutionality of similar statutes allowing for detention or arrest of grand jury witnesses and also considered the safeguards provided by § 3144 (release after deposition and/or release after bail hearing) to conclude that applying the statute in the case before it did not raise constitutional concerns generally or as to the witness at issue specifically. 349 F.3d at 56-64.  The witness in <u>Awadallah</u> had been detained for 20 days before testifying before the grand jury and allegedly perjuring himself, resulting in his arrest on perjury charges nine days later. <u>Id.</u>  at 63-64.  He had received two bail hearings within days of his arrest. <u>Id.</u>  at 64.

As the witnesses point out in reply, the court of appeals in <u>Awadallah</u> observed that "[t]he district court noted (and we agree) that it would be improper for the government to use § 3144 for

other ends, such as the detention of persons suspected of criminal activity for which probable cause has not yet been established." Id.  at 59. But the majority of the Supreme Court in al-Kidd rejected consideration of subjective intent of the government.  The witness in al-Kidd had been arrested on his way to Saudi Arabia, held in custody for 16 days, and then subjected to supervised release for 14 months until the trial of the defendant. 563 U.S. at 734. The witness was never called at the trial and filed a Bivens action to challenge the constitutionality of the Attorney General's alleged policy of pretextually detaining individuals who would not be called as witnesses but who had suspected ties to terrorist organizations though the government lacked sufficient evidence to charge them. Id. The witness conceded that "individualized suspicion supported the issuance of the material-witness arrest warrant; and [did] not assert that his arrest would have been unconstitutional absent the alleged pretextual use of the warrant." 563 U.S. at 740. The Supreme Court rejected creating an exception to the general rule of Fourth Amendment analysis and held "that an objectively reasonable arrest and detention of a material witness pursuant to a validly obtained warrant cannot be challenged as unconstitutional on the basis of allegations that the arresting authority had an improper motive." Id.  at 744.

The Supreme Court considered the argument, reiterated by the witnesses here, that a pretextual warrant is like the English Crown's use of general warrants and explained:

> [The Attorney General] must be forgiven for missing the parallel, which escapes us as well. The principal evil of the general warrant was addressed by the Fourth Amendment's particularity requirement, which [the Attorney General]'s alleged policy made no effort to evade. The warrant authorizing al-Kidd's arrest named al-Kidd and only al-Kidd. It might be argued, perhaps, that when, in response to the English abuses, the Fourth Amendment said that warrants could only issue "on probable cause" it meant only probable cause to suspect a violation of law, and not probable cause to believe that the individual named in the warrant was a material witness. But that would make all arrests pursuant to material-witness warrants unconstitutional, whether pretextual or not—and that is not the position taken by al-Kidd in this case.

Id. at 742-43 (citation omitted).

As the witnesses here point out, the Court in al-Kidd did not address whether the warrant was validly obtained. That is because the witness conceded this point. And it is true that the concurring opinions raised concerns about whether the warrant had been validly obtained in light of questions about omissions and misrepresentations in the affidavit. Id. at 744 (Kennedy, J., concurring); id. at 749 (Ginsburg, J., concurring); id. at 751-52 (Sotomayor, J., concurring). But the witnesses here do not raise similar challenges to the affidavit supporting the warrants. They do not allege that the government has misrepresented whether the witnesses have evidence material to their investigation or that it may become impracticable to secure their presence by subpoena, though the witnesses do offer assurances that they will return if and when needed. By comparison, in al-Kidd, Justice Ginsburg observed certain defects in the affidavit submitted to the magistrate judge, including omission of the fact that the witness's parents, wife, and children were citizens and residents of the United States and the fact that the witness had cooperated with the FBI several times when they asked to interview him, as well as misrepresenting that he had a one way first class ticket to Saudi Araba when he actually had a round trip coach ticket. Id. at 749 (Ginsburg, J., concurring).

When asked to consider the subjective intent of the government in its use of the Material Witness Statute, the majority of the Supreme Court rejected the invitation. While this court can consider whether the warrants in this case were validly issued, it cannot strike otherwise valid warrants because the government may also be contemplating charging some or all of these witnesses[6] This is not a case where the movants contend their detention is entirely pretextual. They do not claim that their testimony is immaterial or cumulative or unnecessary to the grand jury

---

[6]Belying any such improper intent, were intent relevant, since the motion was filed, five of the seven witnesses have been offered immunity and have appeared before the grand jury.

investigation or that they have some particularized basis to believe that the government will never call these witnesses. The undersigned has already found probable cause supports the issuance of the warrants and the witnesses have presented no basis to change the undersigned's finding that their testimony is material in a criminal proceeding and that it may become impracticable to secure their appearance by subpoena. Accordingly, the warrants are facially valid and as a result, following the guidance of the Supreme Court in <u>al-Kidd</u>, the government's subjective intent is not a relevant constitutional consideration.

4. *Immunity under 18 U.S.C. § 6002*

The witnesses argue that they must be provided with immunity under 18 U.S.C. §6002. As noted above, witnesses Nalagon, Gonzaga, Bernabe, Baliad, and Cabanayan have already been granted § 6002 immunity. It is believed that counsel are working out the logistics of Akkaya's grand jury appearance.  It is also believed that no decision has yet been made regarding Chief Engineer Tan. Thus, this issue remains live only as to Tan.

The witnesses argue that the government's refusal to grant Tan immunity shows that it is using the Material Witness Statute to hold him as a potential defendant. They insist the government cannot hold him for this purpose indefinitely.

The government argues that they have to follow certain procedures to be able to offer § 6002 immunity[7] and that they typically require a proffer first so that they know what the testimony will be.

---

[7] Section 6002 provides that when a witness refuses to testify on the basis of self-incrimination, the person be ordered to testify under § 6002:

> but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6002.

To the extent the witnesses raise this argument in support of their allegation that the use of a Material Witness Warrant here is a pretext, the court has already rejected consideration of the government's subjective intent. There is probable cause for issuance of the warrant under § 3144; whether the government also plans to charge some or all of the witnesses at a later time is irrelevant. Moreover, the government has demonstrated that immunity will be provided to obtain the witnesses' testimony. At this time, the court has found that Tan remains material to the criminal proceeding, but the investigation has not proceeded far enough that his testimony can be adequately secured now.

5. *Should the warrant be stricken in the court's discretion and in consideration of the equities?*

The witnesses submit that the Material Witness Statute does not compel the court to issue a warrant. Citing Justice Ginsburg's concurrence in <u>al-Kidd</u>, they say the "issuance of the warrant is discretionary." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 748, n.2 (Ginsburg, J., concurring). They argue that the court should exercise its discretion not to detain the witnesses here because possession of misleading records concerning high seas operations should not be a crime prosecuted by the port state and that even if it could, it is not a sufficiently serious crime to justify detaining innocent seafarers. They submit that many seafarers detained in similar circumstances are never called to testify. They also submit that in the experience of their counsel's office, seafarers who are released do return for trial or make their testimony available through depositions. They further argue that the regulations should not be interpreted as criminalizing the mere possession of misleading records and that witnesses cannot be prosecuted for entries made on the high seas.

The government responds that the witnesses' arguments regarding MARPOL, APPS, and International Law are inapposite and contrary to controlling Fifth Circuit precedent. Indeed, in <u>United States v. Jho</u>, the Fifth Circuit held that:

> We refuse to conclude that by imposing limitations on the APPS's application to foreign-flagged vessels Congress intended so obviously to frustrate the government's ability to enforce MARPOL's requirements. Instead, we read the requirement that an oil record book be "maintained" as imposing a duty upon a foreign-flagged vessel to ensure that its oil record book is accurate (or at least not knowingly inaccurate) upon entering the ports of navigable waters of the United States.

534 F.3d 398, 403 (5th Cir. 2008). The court also found that "MARPOL allows for concurrent jurisdiction between a flag state and a non-flag state when MARPOL violations occur within the jurisdiction of the non-flag state." Id. at 403 n. 3.

The movants point out that, interpreting the same regulations, the Fifth Circuit further held that "*[c]hief engineers* on foreign-flagged vessels cannot, however, be prosecuted simply for having previously failed to maintain an oil record book once a ship enters U.S. waters, since 33 C.F.R. § 151.25 assigns that duty explicitly and exclusively to the 'master or other person having charge of the ship.'" United States v. Fafalios, 817 F.3d 155, 162 (5th Cir. 2016) (emphasis added). The court of appeals also recognized that a chief engineer might be charged with aiding and abetting the failure to maintain an accurate record like the chief engineer in Jho. Id.

The government also argues that other courts have imposed liability under 18 U.S.C. §1519 for falsification of records on the high seas in similar instances involving falsified ORBs. The government submits that the Material Witness affidavit also addresses non-MARPOL offenses and further argues that none of the movants' arguments address the apparent violation of the PWSA.

The movants' motion seemed to argue that the crimes being investigated cannot even be prosecuted and that, therefore, the warrants should be dissolved. In reply, however, they make clearer that what they actually argue is that because MARPOL contemplates flag state enforcement (even if it is concurrent to jurisdiction of the United States), because the witnesses (besides the master) cannot be charged for failure to maintain ORB, because the government only uses the

PWSA to enhance MARPOL/APPS charges and not as independent criminal violations where there is no incident or damage, and because the government rarely uses the Material Witness Warrant, this court should exercise its discretion to quash the warrant. The court finds these considerations lie within the discretion of the government and not the Court. Subject to only constitutional constraints, it is the government that decides what to investigate, who to charge, and what to charge them with. See Wayte v. United States, 470 U.S. 598, 607 (1985) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.") (alteration in original) ; United States v. Lovasco, 431 U.S. 783, 794–95 (1977) ("The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest."). The court has addressed the witnesses' constitutional challenge above. The movants have not shown that the investigation or potential charges to which their testimony is material are themselves impossible or illegal. They have not shown that their testimony is not material to the grand jury investigation. The court's previous finding of materiality remains. With regard to the witnesses' willingness to return, the court is sympathetic to their promises and the experience of counsel with other witnesses in other cases, but once the witnesses are beyond the jurisdiction of this court, there is simply no way to enforce their return. The court remains convinced that it is impracticable to secure the presence of the witnesses by subpoena. And the court declines to exercise its discretion to quash the warrant on the grounds that the witnesses believe the government should not be investigating the matter at all.

6. *Modification of Conditions or Release Following Deposition*

The witnesses argue that even if the warrants are not stricken, they are entitled to be released on the least restrictive conditions that will reasonably assure their testimony is preserved. They submit that any information they have can be obtained promptly via a deposition as long as they are given immunity. They also submit that if the grand jury issues an indictment, they will appoint their counsel to accept any subpoena for them. The witnesses argue that the government's actions amount to requiring ship owners to pledge foreign seafarers as human collateral. They submit that often witnesses are never called to testify, in some cases after being held under security agreements for over a year.[8] They argue that a Rule 15(a)(2) deposition should be ordered here.

The government does not oppose depositions pursuant to Rule 15, but argues that it is too soon to hold them. It points out that an investigation has numerous steps, including the collection and review of voluminous records, forensic examination of the computer system, and retention of an expert to examine the Oil Content Monitor and analyze the ORB. The government submits that if depositions were held now, the questions would be speculative. It adds that all potential parties must be allowed an opportunity to participate in the depositions to prevent a future defendant from arguing that the testimony cannot be used at trial because it had been unable to meaningfully participate in the deposition to fully develop facts necessary to its defense. Conducting depositions pre-indictment heightens this risk because without knowing who will be indicted, the government cannot know which parties to include in the depositions, nor the charges and potential theories of liability that will be identified. This, in turn, impacts and impedes the ability of the parties, government and defendants alike, to prepare and meaningfully participate.

---

[8] As noted, five of the seven witnesses have already been called to testify at least once, all or most within two months of their detention.

Section 3144 requires that the witnesses cannot be detained if their testimony can adequately be secured by deposition and if further detention is not necessary to prevent a failure of justice. The court agrees that it is too soon to conduct Rule 15 depositions for trial both because the investigation is still developing such that the government could not be sure it was eliciting the testimony it needed and because the defendants have not yet been identified such that they could prepare for and meaningfully participate in the deposition. But the witnesses insist they should be deposed in single party depositions in lieu of testifying live before the grand jury and that they should be released thereafter. They argue that the present material witness warrants pertain to the grand jury investigation and not a future, hypothetical judicial criminal proceeding. They argue that once their grand jury testimony has been secured, they cannot be forced to remain in this district just because an indictment may issue at some time in the future and their testimony may be material to the resulting trial.

The government has made clear that single party depositions will not suffice for the grand jury investigation. They have already called five witnesses to testify, arguably mooting the suggestion by plaintiffs that they be deposed in lieu of testifying live.  The government further notes that it has had to recall some of the witnesses after they first testified because of information discovered subsequent to their testimony. The court agrees that to the extent the issue is not moot, a single party deposition taken at this time will not ensure that the witnesses are no longer necessary. In part because of the push by the court and the witnesses to quickly obtain their testimony, the witnesses have been called to testify before the investigation was sufficiently developed for the government to be able to ask all necessary questions. The government is still actively obtaining and reviewing data and documents and may require additional testimony of the

witnesses. The court has reviewed the status reports filed by the government *ex parte*[9] in advance

of the May 17, June 1, and June 14, 2021, status conferences and has discussed in detail the status

of the investigation with the government at each conference. At this time, the court remains

convinced that the testimony of each the witnesses is material to the grand jury proceedings. The

court will continue to receive status updates from the government on a bi-weekly basis to ensure

that they are not being forced to stay in this district longer than necessary.[10]

The government has not taken an explicit position as to whether it must obtain a new

material witness warrant if and when an indictment is issued and the testimony of the witnesses

becomes necessary to the trial of the forthcoming charges.[11]  As a practical matter, the grand jury

investigation will be ongoing until the indictment is issued or the government concludes it is unable

to obtain an indictment. If the witnesses' testimony remains material to the grand jury proceedings

until the indictment is issued, the court's order requiring them to relinquish their passports and

---

[9] Government attorneys are prohibited from publicly disclosing any information regarding a grand jury investigation by Federal Rule of Criminal Procedure Rule 6(e). Because of this limit and because of the public policy reasons for maintaining secrecy of grand jury proceedings, e.g., United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958), the court has authorized the filing of the status reports and at least part of the status conference discussion to be *ex parte* and under seal.

[10] Although the government takes the position that Rule 46(h)(2) is inapplicable here because the witnesses are not being "held in custody," that rule provides a procedure to prevent the abuse of material witness warrants. It provides that

> An attorney for the government must report biweekly to the court, listing each material witness held in custody for more than 10 days pending indictment, arraignment, or trial. For each material witness listed in the report, an attorney for the government must state why the witness should not be released with or without a deposition being taken under Rule 15(a).

Fed. R. Crim. P. 46(h)(2). The court has adopted a similar procedure here, regardless of whether the rule technically applies.  Based on these status conferences, and highly cognizant of the hardship being imposed on these foreign seamen, the court is satisfied that the government is moving aggressively to conduct discovery, investigate the case, and present it to the grand jury, despite some unusual obstacles beyond the government's or the court's control. It should be noted that the court system is just returning to live proceedings after COVID-19. Getting and keeping a grand jury quorum has proven difficult on numerous days. It has not helped that the term of a grand jury extended as a result of COVID-19 is ending and a new grand jury is being empaneled at the end of June, creating a continuity issue. Furthermore, the court is aware of discovery battles being fought under the supervision of the district judge.

[11] The court recognizes that this issue was raised in the witnesses' Reply brief (Rec. Doc. 37) and more robustly developed in their first Supplemental Memorandum (Rec. Doc. 57).  The government has not filed any briefs since their Opposition, and, as such, has not addressed the issue squarely.  (Rec. Doc. 36).

stay in the United States remains proper. Then, to the extent a new material witness warrant is required, it will likely be possible to obtain one with regard to the ensuing criminal proceeding nearly simultaneously. In that case, the issue raised by the witnesses is moot. But, there remains the possibility that the testimony of some or all of the witnesses will cease to be material in advance of that time. At present, that issue is premature because the witnesses remain material to the grand jury proceeding. Moreover, the government has not yet had the opportunity to brief the issue, and, accordingly, the court will take it under submission. The government will be allowed until July 2, 2021, to file a memorandum addressing its position.

7. *Extrajudicial conditions*

Tan also argues that the government should not be allowed to impose additional conditions on him by virtue of its agreement with third parties. He asks that the government be directed to cease its "illegal practice of contracting for extra-judicial restrictions on the liberty of innocent human beings." The government submits that this proceeding is not a proper vehicle to obtain injunctive relief. It submits that the terms of the agreement with the owner and operator are reasonable and that the agreement recognizes that the owner and operator cannot exercise complete control over the crewmembers. For example, it provides a process for returning passports to crewmembers upon their request.  It adds that the reason the crew are having their lodging, salary, medical care, and a per diem paid for is because of the security agreement. At oral argument, the government argued that although it has no evidence of Tan pressuring the other witnesses, in nearly every other case they have handled, there has been some form of obstruction of justice and/or witness tampering. The government argued that the Coast Guard's condition of requiring that the chief engineer be lodged separately from the rest of the crew is reasonable under the circumstances. The government argued that although the witnesses could all still meet together, if the other

witnesses are not staying at the same hotel, they can decide for themselves whether to meet with the chief engineer.

Since the filing of the motion, Tan returned to the Philippines.  Thus, the security agreement's requirement that he remain in a separate hotel was mooted, at least temporarily. Upon his return in mid-June, Tan reurged his motion to not stay in a different hotel. At this time, the court is not convinced that being housed at a separate hotel is an unreasonable hardship. The witnesses all appear to have at least a basic command of English, and, as the government notes, they are free to meet with one another. Being housed at different locations is a reasonable precaution against pressure being put on the lower level witnesses.

Conclusion

For the foregoing reasons, the Motion to Quash is DENIED, except as to the issue of whether the grand jury proceeding and the anticipated future court proceeding are separate proceedings under § 3144. The government shall file a memorandum addressing its position on this issue by July 2, 2021. Further, the government will continue to report to the court on a bi-weekly basis regarding the continued need for the witnesses to remain in this district for purposes of the grand jury investigation.

New Orleans, Louisiana, this 18th day of June, 2021.

Janis van Meerveld<br>
United States Magistrate Judge